SK/EMR/PP/MED
F. #2019R00927

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -                                         Docket No. 19-CR-576 (S-1)(BMC)

GENARO GARCIA LUNA,

            Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

GOVERNMENT'S MEMORANDUM IN OPPOSITION TO THE
DEFENDANT'S MOTION TO DISMISS AND FOR A BILL OF PARTICULARS

BREON PEACE
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Saritha Komatireddy
Erin M. Reid
Philip Pilmar
Marietou E. Diouf
Assistant U.S. Attorneys
    (Of Counsel)

## PRELIMINARY STATEMENT

The indictment in this case charges the defendant, Genaro Garcia Luna, with: (1) engaging in a continuing criminal enterprise; (2) international cocaine distribution conspiracy; (3) conspiracy to distribute and possess with intent to distribute cocaine; (4) conspiracy to import cocaine; and (5) making false statements. (ECF No. 47 ("Ind.")). Between 2001 and 2012, the defendant was a high-ranking official in the Mexican government. Specifically, from 2001 to 2005, the defendant was the head of Mexico's Federal Investigative Agency. From 2006 to 2012, the defendant served as Mexico's Secretary of Public Security and, in that capacity, controlled Mexico's Federal Police Force.

As set forth in the indictment, the defendant used his official positions in the Mexican government to assist the Sinaloa Cartel, a notorious Mexican drug cartel, in exchange for multi-million-dollar bribes. Specifically, the indictment alleges that between January 2001 and July 2020, the defendant conspired with members of the Sinaloa Cartel to import large quantities of narcotics into the United States, and, in 2018, after moving to the United States, lied about this conduct in an attempt to become a United States citizen.

The defendant now moves to dismiss the first four counts of the indictment, arguing that, even if he took bribes from the Sinaloa Cartel, he withdrew from the conspiracy when he left government in 2012 and moved to the United States. The Court should deny this motion. Although it is styled as a motion to dismiss, the defendant's motion is actually a thinly-veiled challenge to the sufficiency of the government's evidence under Rule 29, which is not appropriate at the pre-trial stage. The government's ability to prove its charges is an issue for the jury at trial. Moreover, the defendant has not met his burden of proving the affirmative defense of withdrawal as a matter of law; instead, the defendant's post-2012 conduct demonstrates that he never renounced the goals of the conspiracy.

1

The defendant also moves for a bill of particulars, claiming that "it is impossible for Mr. Garcia Luna's lawyers to adequately prepare for trial without additional particulars from the government." (Def.'s Mot. at 13). For the reasons set forth below, the defendant is not entitled to a bill of particulars. Notably, the government has already provided the defendant with an extraordinary volume of early § 3500 material in this case, including the § 3500 material for 15 law enforcement witnesses and six potential cooperating witnesses, and will continue to provide § 3500 material for additional witnesses on a rolling basis in advance of trial. As a result, the Court should deny the defendant's motion.

## ARGUMENT

I. The Defendant's Motion to Dismiss Cannot Meet the High Standard Set By the Second Circuit

   A. Legal Standard

      1. Motion to Dismiss

Motions to dismiss indictments are disfavored and must satisfy a high standard. See United States v. Bustos de la Pava, 268 F.3d 157, 165 (2d Cir. 2001) ("[D]ismissal of an indictment is an extraordinary remedy reserved only for extremely limited circumstances implicating fundamental rights."); United States v. Kerik, 615 F. Supp. 2d 256, 262 (S.D.N.Y. 2009) ("A defendant seeking to dismiss counts under Rule 12 must satisfy a high standard.").

It is well-established that "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Alfonso, 143 F.3d at 776 (quoting Hamling v. United States, 418 U.S. 87, 117 (1974)). Federal Rule of Criminal Procedure 7 requires only that an indictment contain a

"plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).

The Second Circuit has held that an indictment that tracks the language of the statute is sufficient to meet these notice requirements. See United States v. Yannotti, 541 F.3d 112, 127 (2d Cir. 2008) (to withstand a motion to dismiss, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime."); United States v. Flaharty, 295 F.3d 182, 198 (2d Cir. 2002) (same); United States v. Bernstein, 533 F.2d 775, 786 (2d Cir. 1976) (observing that the Second Circuit has "consistently sustained indictments" that tracked the applicable statutory language and described the time and place in "approximate terms."). For example, an indictment that charges a conspiracy "is sufficient if it tracks the language of the statute and alleges all of the essential elements of conspiracy . . . ." United States v. Mermelstein, 487 F. Supp. 2d 242, 251 (E.D.N.Y. 2007) (quoting United States v. Zandstra, No. 00-CR-209, 2000 WL 1368050, at *3 (S.D.N.Y. 2000)) (listing elements of conspiracies charged under 18 U.S.C. § 371).

Federal Rule of Criminal Procedure 12 provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). On a pre-trial motion to dismiss, the court must accept all factual allegations in the indictment as true, and "the sufficiency of the evidence is not appropriately addressed." Alfonso, 143 F.3d at 776-77. In other words, Rule 12 authorizes defendants to challenge the lawfulness of a prosecution on purely legal, as opposed to factual, grounds. See United States v. Aleynikov, 676 F.3d 71, 75–76 (2d Cir. 2012) ("[A] federal indictment can be challenged on the ground that it fails to allege a crime within the terms of the applicable statute.").

Thus, a defendant's factual arguments challenging facially valid pleadings do not justify pre-trial dismissal of the indictment. The government is entitled to marshal and present its evidence at trial and, if warranted, have its sufficiency tested by a motion for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. A motion to dismiss a properly pled indictment "confuse[s] standards of pleading with standards of proof." United States v. Reale, No. S4 96 CR. 1069 (DAB), 1997 WL 580778, at *7 (S.D.N.Y. Sept. 17, 1997); United States v. Perez, 575 F.3d 164, 166 (2d Cir. 2009) (defendants had no basis to challenge "sufficiency of the indictment before trial because it met the basic pleading requirements"); United States v. Gotti, No. S4 02-CR-743 (RCC), 2004 WL 32858, at *2 (S.D.N.Y. Jan. 6, 2004) (a "pretrial motion to dismiss part of the indictment is not the time nor the proper occasion" to contest the sufficiency of the evidence).

### 2. The Affirmative Defense of Withdrawal

"It is well established that where the government has shown that a conspiracy existed and that a given defendant was a member of it, his membership is presumed to continue until the last overt act by any of the coconspirators, unless the defendant proves that the conspiracy was terminated or that he took affirmative steps to withdraw." United States v. Flaharty, 295 F.3d 182, 192 (2d Cir. 2002) (citations and internal quotation marks omitted). Withdrawal is an affirmative defense, and the defendant has the burden of proving by a preponderance of the evidence that he withdrew from the conspiracy outside the statute of limitations period. Smith v. United States, 568 U.S. 106, 133 (2013).

The issue of whether a defendant effectively withdrew from a conspiracy prior to the statute of limitations period is one "of fact for the jury to decide." United States v. Carnesi, 461 F. Supp. 2d 97, 99 (E.D.N.Y. 2006); see also United States v. Leslie, 658 F.3d 140, 143 (2d Cir. 2011) ("it is well-settled that withdrawal from a conspiracy is an affirmative defense for which

4

the defendant bears the burden of proof at trial."); United States v. Burke, No. 09 CR 135 (SJ), 2011 WL 2609837, at *5 (E.D.N.Y. July 1, 2011), aff'd, 552 F. App'x 60 (2d Cir. 2014) (finding that whether a defendant's incarceration "constitutes a withdrawal from the alleged conspiracy is 'a fact-dependent question' that is not appropriate for a pretrial motion."); Berger, 22 F. Supp. 2d at 154 (holding that a claim of withdrawal prior to the limitations period was not properly brought as a motion to dismiss).[1]

"[F]or a defendant to show that he withdrew from the conspiracy, proof merely that he ceased conspiratorial activity is not enough." United States v. Eppolito, 543 F.3d 25, 48-49 (2d Cir 2008); see also United States v. Berger, 224 F.3d 107, 119 (2d Cir. 2000) ("resignation from the enterprise does not, in and of itself, constitute withdrawal from a conspiracy as a matter of law."). "He must also show that he performed some act that affirmatively established that he disavowed his criminal association with the conspiracy, either the making of a clean breast to the authorities, or communication of the abandonment in a manner reasonably calculated to reach co-conspirators." Eppolito, 543 F.3d at 48-49 (internal quotation marks and citations omitted); see also United States v. Hoskins, 44 F.4th 140, 155 (2d Cir. 2022) ("A defendant may withdraw from

---

[1] Courts in other circuits have reached the same conclusion. See e.g. United States v. Gardley, No. 2:10-CR-236 (GMN), 2013 WL 4786208, at *3 (D. Nev. Sept. 5, 2013) (citing Smith, 568 U.S. at 108-12, for the proposition that "withdrawal is an affirmative defense to be raised at trial, not in a motion to dismiss"); United States v. Ngige, No. 2:12CR98(JAW), 2013 WL 950689, at *2 (D. Me. Mar. 12, 2013) (relying on Smith, 568 U.S. at 112, and holding that "whether [the defendant] will be able to establish the demanding defense of withdrawal is a matter for a jury to decide upon hearing evidence, not for a judge to decide upon reviewing memoranda"); United States v. Searles, No. 7CR195(CVE), 2009 WL 302306, at *3 (N.D. Okla. Feb. 6, 2009) ("[Defendant] may be entitled to an instruction at trial concerning his alleged withdrawal from the conspiracy, but it would inappropriate [sic] for the Court to resolve this fact issue on a pretrial motion."); United States v. Battle, 473 F. Supp. 2d 1185, 1206 (S.D. Fla. 2006) (holding that defendant's affirmative defense of withdrawal cannot be decided as a matter of law because such a defense "requires scrutiny of all of the pertinent facts in each case, including the scope of the conspiratorial agreement").

a conspiracy by giving a timely warning about the conspiracy to proper law enforcement officials or wholly depriving his prior efforts of effectiveness in the commission of the crime or making appropriate efforts to prevent the commission of a crime or by doing acts that are inconsistent with the objects of the conspiracy and making reasonable efforts to communicate those acts to his coconspirators."). And, "the defendant must not take any subsequent acts to promote the conspiracy" or "receive any additional benefits from the conspiracy." Id.; see also Berger, 224 F. 3d at 119 ("Even if [a] the defendant completely severs his or her ties with the enterprise, the defendant still may remain a part of the conspiracy if he or she continues to do acts in furtherance of the conspiracy and continues to receive benefits from the conspiracy's operations.") (internal citations omitted); United States v. Abdur-Razzaaq, 372 Fed. Appx. 212, 215 (2d Cir. 2010) (summary order) (noting that a defendant "accepted drug proceeds" during statute of limitations period in rejecting the defendant's withdrawal defense); United States v. Acuna, 313 Fed. Appx. 283, at *11-*12 (11th Cir. 2009) (holding that a defendant had not withdrawn from a conspiracy where he continued to conceal the source of ill-gotten gains after he resigned from enterprise).

Thus, in Eppolito, the Second Circuit reversed a district court's decision to grant a Rule 29 motion in favor of former police officers charged with conspiring with members of the mafia. 543 F.3d at 48-49. The Court held that the jury had ample evidence to conclude that the officers had not withdrawn from the conspiracy even though the officers had resigned from the police force and moved out of state, when there was no evidence that their resignations had ended their associations with their co-conspirators and the defendants did retain some contact with each other and others. Id.; see also United States v. Grubisich, No. 19-CR-102 (RJD), ECF No. 69 at 6 (E.D.N.Y. Oct. 22, 2020) (defendant's assertions that the end of his tenure as CEO established that he withdrew from the conspiracy since his exit was well known to his alleged co-conspirators and

6

foreclosed his ability to supervise relevant accounts "present[ed] issues of fact to be determined by a jury") (citing cases). Similarly, in Berger, the Second Circuit held that a defendant's resignation from a sham company that perpetuated a charged fraud was not sufficient to establish withdrawal as a matter of law because the defendant's post-resignation conduct, including lying to law enforcement and failing to inform victims of the conspiracy, suggested that he had failed to renounce the goals of the conspiracy. Berger, 224 at 119. Even if the defendant had truly severed all ties to the conspiracy, moreover, the Berger court held that the defendant's lies during the statute of limitations period "reestablished his link" to the conspiracy "by helping to conceal the conspiracy from investigators." Id.; see also United States v. Bennett, 984 F.2d 597, 610 (4th Cir. 1993) (holding that perjury to conceal culpability of defendant and others defeated withdrawal defense); United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181, 1199 (2d Cir. 1989) ("[T]he trial court found that the statements . . . were in furtherance of the conspiracy because they were designed to 'cover up' [certain conspiratorial matters].").

Because the success or failure of a withdrawal defense is highly particularized and fact dependent, courts have repeatedly held that a withdrawal defense is inappropriate for a motion to dismiss and may be renewed as a Rule 29 motion if a defendant is convicted. See, e.g., United States v. Hoskins, 73 F. Supp. 3d 154, 163 (D. Conn. 2014) ("Because Defendant's withdrawal and statute of limitations defenses require the resolution of factual disputes, they must be decided by a jury in the first instance on the basis of a full evidentiary record."); United States v. Carnesi, 461 F. Supp. 2d 97, 99 (E.D.N.Y. 2006) ("[I]f the Government fails to prove that the acts occurred within the applicable limitations period at the trial, the Defendant may renew the motion to dismiss the indictment. However, at this stage of the litigation the motion is premature.").

7

### B. The Court Should Deny the Motion to Dismiss

The defendant has moved to dismiss the first four counts of the indictment because, according to him, even if he took bribes from the Sinaloa Cartel, he withdrew from the conspiracy when he left government in 2012 and moved to the United States. (Def. Mot. at 4). He is incorrect. As set forth below, the defendant's arguments ignore the allegations set forth in the indictment and the binding law of this Circuit.

First, for each count that the defendant seeks to dismiss, the indictment properly alleges that the crime occurred "from January 1, 2001 to the present." (Ind. ¶¶ 8, 16, 18, 20). Because the defendant was first indicted on December 4, 2019 (see ECF No. 1), and the indictment alleges that the defendant was a member of the conspiracy after December 4, 2014 (five years prior to the grand jury returning the original indictment), the indictment properly alleges that the defendant was a member of the conspiracy during the charged time period. Nothing else is required to defeat the defendant's motion in light of the overwhelming legal consensus that withdrawal is not an issue to be resolved pretrial.

The defendant argues that his motion should be granted because the parties agree that he left the Mexican government in 2012 and subsequently moved to the United States, which, he asserts, "disabled him from further participation in the conspiracy". (Def. Mot. at 10). To the contrary, the forced end of the defendant's term in office due to the change in political administrations in Mexico is hardly a complete "disavow[al] [of] his criminal association with the conspiracy," Eppolito, at 48; see also Hoskins, 44 F.4th at 155 (upholding a jury instruction stating that, "[r]esignation from employment does not by itself necessarily constitute withdrawal unless you find the defendant acted to disavow or defeat the purpose of the conspiracy").

8

The defendant argues that this case is analogous to United States v. Nerlinger, 862 F.2d 967, 974 (2d Cir. 1988), where a trader at a bank who was involved in a fraud conspiracy was found to have withdrawn from the conspiracy by having both resigned from the bank and closed the accounts through which the fraud was perpetrated. In Nerlinger, however, the Second Circuit found that the defendant's act of closing the account—which actively destroyed the instrument by which the fraud, and thus the conspiracy, was perpetrated—was an additional affirmative act on top of his resignation that validated his withdrawal defense. Id. In this case, by contrast, the end of the defendant's term in government did nothing to end the conspiracy or to damper the vast power of the Sinaloa Cartel, which continues to thrive in Mexico to this day. And contrary to the defendant's claims, his influence, power, and contacts as a former Mexican cabinet official continued well beyond his public position. Instead, the defendant's departure from his job is akin to the resignations of the defendants in Eppolito and Berger, and his move to the United States is analogous to the move to Las Vegas in Eppolito. As in those cases, the defendant's actions fall far short of withdrawal as a matter of law.

Moreover, the defendant's post-2012 conduct proves that he never abandoned the conspiracy. Among other things, the evidence at trial will show that the defendant lied about the conspiracy on at least two occasions: (i) in 2018, in his application to become a United States citizen; and (ii) in 2019, during his post-arrest interview with law enforcement agents. Indeed, during his post-arrest interview, the defendant repeatedly lied about his involvement in the conspiracy, including denying (i) ever having met with anyone from any drug trafficking groups; (ii) ever being aware that anyone who worked under him had met with anyone from any drug trafficking groups; (iii) ever having a phone conversation with any drug traffickers; and (iv) ever helping the Beltran-Leyva Organization, a family-led drug trafficking organization that was part

9

of the Sinaloa Cartel.[2] Despite the claims in the defendant's motion, these repeated, specific lies (and others) absolutely amounted to "mislead[ing] investigators who were specifically examining the activities of the cartel." (Def. Mot. at 8). Just like in Berger, the defendant's lies demonstrate that he never intended to make a clean break from the Sinaloa Cartel or to renounce the goals of the conspiracy. Moreover, as in Berger, even if the Court were to find that the defendant effectively resigned from the conspiracy in 2012, his lies re-established his link to the Sinaloa Cartel within the statute of limitations period. For all these reasons, the Court should deny the defendant's motion to dismiss.

II. The Court Should Deny the Defendant's Motion for a Bill of Particulars

   A. Legal Standard

Rule 7(c)(1) of the Federal Rules of Criminal Procedure provides that an indictment need only contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged." "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974). The Second Circuit has made clear that an indictment satisfies the requirements of Rule 7(c) if it "do[es] little more than . . . track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." United States v. Yannotti, 541 F.3d 112, 127 (2d Cir. 2008) (citation omitted). For example, in Yannotti, the Second Circuit upheld an indictment charging RICO conspiracy that the defendant

---

[2] The government is not required to proffer all evidence that demonstrates that the defendant's participation in the conspiracy continued past 2012. However, at least one additional piece of evidence was described in the government's first motion in limine: the conversations recorded while he was in custody in 2020, in which the defendant discussed using violence against, and tampering with, witnesses against him. See ECF No. 94.

10

claimed "included overly broad temporal and geographic spans," did not detail the alleged "conspiratorial conduct," and did not identify the alleged co-conspirators. Id. In upholding the indictment, which merely tracked the language of the statute, the court concluded that the "contested portions of the [indictment] provided Yannotti with sufficient notice of the allegations . . . so that he could defend against those allegations in the instant prosecution and in any future prosecutions." Id.

Additional details, in the form of a bill of particulars, see Fed. R. Crim. P. 7(f), are appropriate only when the indictment is too vague to inform the defendant of the nature of the charges to allow the preparation of a defense, avoid unfair surprise, and assert a double jeopardy claim. See United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987) (per curiam); see also United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990) (requiring bill of particulars "only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused" (citation omitted)), abrogated in part on other grounds by United States v. Marcus, 628 F.3d 36 (2d Cir. 2010); Hawit, 2017 WL 663542, at *11. Thus, courts should grant a bill of particulars providing more "details of the charge[s]" only if the additional information is "necessary"—not merely helpful—"to the preparation of the defense" and disclosure would "avoid prejudicial surprise" at trial. Torres, 901 F.2d at 234 (emphasis added) (citation omitted); see also United States v. Rivera, 89 F. Supp. 3d 376, 401 (E.D.N.Y 2015); United States v. Perryman, 881 F. Supp. 2d 427, 430 (E.D.N.Y. 2012); United States v. Rivera, No. 09-CR-619 (SJF), 2011 WL 1429125, at *8 (E.D.N.Y. Apr. 13, 2011) ("The ultimate test in determining whether a bill of particulars is appropriate is whether the information is necessary, not whether it is helpful to the defendant." (emphasis added) (citation omitted)).

11

In connection with conspiracy offenses, including those charged in the indictment, the government must prove only that the defendant agreed with others to commit the charged crimes; the government is not required to establish the date, time, and circumstances of every act in furtherance of the conspiracy over the charged period. See United States v. Urso, 369 F. Supp. 2d 254, 272 (E.D.N.Y. 2005) ("As a general rule, a defendant is not entitled to receive details of the government's conspiracy allegations in a bill of particulars."); United States v. Carroll, 510 F.2d 507, 509 (2d Cir. 1975) ("There is no general requirement that the government disclose in a bill of particulars all the overt acts it will prove in establishing a conspiracy charge."); United States v. Upton, 856 F. Supp. 727, 753 (E.D.N.Y. 1994); United States v. Feola, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987) ("as applied to a charge of conspiracy, . . . the view virtually universally held is that the defendant is not entitled to particulars regarding the formation of the conspiracy; [the] exact time and place of overt acts and the names and addresses of persons present; the details concerning how and when the conspiracy was formed or when each participant entered the conspiracy") (collecting cases).

The bill of particulars is not a procedural device to "obtain the government's evidence; restrict the government's evidence prior to trial; assist the defendant's investigation; obtain the precise way in which the government intends to prove its case; interpret its evidence for the defendant; or disclose its legal theory." Rivera, 89 F. Supp. 3d at 401 (citation omitted); United States v. Taylor, 17 F. Supp. 3d 162, 178-79 (E.D.N.Y. 2014); see also Shkreli, 2016 WL 8711065, at *4 (collecting cases); United States v. Pimentel, No. 99-CR-1104 (SJ), 2001 WL 185053, at *4 (E.D.N.Y. Jan. 22, 2001) (bill of particulars not an investigative tool or pretrial discovery device); United States v. Sattar, 314 F. Supp. 2d 279, 318 (S.D.N.Y. 2004) ("The Government may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove

the charges, the precise manner in which the defendant committed the crimes charged, or a preview of the Government's evidence or legal theories.").

Moreover, a bill of particulars is never necessary when "the government has made sufficient disclosures concerning its evidence and witnesses by other means." United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999). Those means need only be in "some acceptable alternate form," Bortnovsky, 820 F.2d at 574, such as discovery, see Walsh, 194 F.3d at 47; Torres, 901 F.2d at 234; United States v. Panza, 750 F.2d 1141, 1148 (2d Cir. 1984), the government's out-of-court representations to defense counsel, see Panza, 750 F.2d at 1148, or motion practice, see United States v. Ahmed, 94 F. Supp. 3d 394, 435 (E.D.N.Y. 2015); Taylor, 17 F. Supp. 3d at 179. "The defendant bears the burden of showing 'the information sought is necessary,' and that he will be prejudiced without it." United States v. Shkreli, No. 15-CR-637 (KAM), 2016 WL 8711065, at *4 (E.D.N.Y. Dec. 16, 2016) (citation omitted). The decision to grant or deny a bill of particulars is committed to the sound discretion of the trial court. See United States v. Fruchter, 104 F. Supp. 2d 289, 311 (S.D.N.Y. 2000).

Thus, "courts generally 'deny requests for bills of particulars concerning the 'wheres, when[s], and with whoms' of the crime." Perryman, 881 F. Supp. 2d at 430 (citation omitted); see also United States v. Trippe, 171 F. Supp. 2d 230, 240 (S.D.N.Y. 2001) (observing that "demands for particular information with respect to where, when, and with whom the Government will charge the defendant with conspiring are routinely denied" (collecting cases)).

B. The Court Should Deny the Defendant's Motion

The defendant's motion for a bill of particulars should be denied. First, under Second Circuit law, the defendant is not entitled to a bill of particulars because the indictment properly tracks the language of the statute and his request is simply a pre-trial discovery device

13

designed to elicit the identity of the government's witnesses and restrict the government's evidence prior to trial. The indictment fairly apprises the defendant of the accusations against him: that from January 2001 through July 2020, the defendant conspired with members of the Sinaloa Cartel by accepting bribes and providing assistance to its drug trafficking activities. In fact, the indictment lists four examples of types of actions the defendant took in furtherance of the enterprise:

> (a) Agreeing not to interfere with the Sinaloa Cartel's drug shipments in Mexico, which typically consisted of multi-ton quantities of narcotics, and the vast majority of which were destined for the United States;
>
> (b) Providing access to sensitive law enforcement information about law enforcement operations against the Sinaloa Cartel;
>
> (c) Targeting rival cartel members for arrest, instead of Sinaloa Cartel members, and providing sensitive law enforcement information about rival cartel members; and
>
> (d) Placing other corrupt officials in positions of power in certain areas of Mexico controlled by the Sinaloa Cartel.

(Ind. ¶ 6). The fact that the indictment does not detail every act that a member of a drug trafficking organization took in furtherance of a drug trafficking organization does not mean a bill of particulars is required. See Perryman, 881 F. Supp. 2d at 430 ("courts generally 'deny requests for bills of particulars concerning the 'wheres, when[s], and with whoms' of the crime"); see also United States v. Trippe, 171 F. Supp. 2d 230, 240 (S.D.N.Y. 2001) (collecting cases).

Second, the government has already provided a voluminous amount of discovery as well as § 3500 material—including § 3500 material for 15 law enforcement witnesses and six potential cooperating witnesses (who specifically discuss the "wheres, when[s], and with whoms" of the defendant's crimes)—and will continue to provide § 3500 material for additional

14

witnesses on a rolling basis in advance of trial.[3] For example, on March 1, 2021, the government voluntarily provided notes and reports of interviews of approximately 25 of the defendant's personal associates and former professional associates. On May 1, 2022, in response to the defendant's April 15, 2022 letter demanding a lengthy list of particulars, the government identified for the defense the Bates-numbers of previously produced discovery where he could find many of the items he requested, such as seizure reports, laboratory analysis, photographs or videos regarding each of the six violations and the defendant's immigration paperwork. The government also agreed to review its § 3500 material and identify the materials that could be produced on a rolling basis, for early disclosure in advance of trial. On May 24, 2022, the government provided § 3500 material for 15 law enforcement witnesses. On July 5, 2022, the government provided § 3500 material for two potential cooperating witnesses. On October 26, 2022, the government provided § 3500 for an additional four potential cooperating witnesses. The government intends to continue to produce early § 3500 material on a rolling basis in advance of trial, as witness safety and other concerns permit.

These materials, which include hundreds of notes from meetings with potential cooperating witnesses, contain significant information about the Sinaloa Cartel, its members, and its methods of operations, including its extensive use of bribes in furtherance of its drug trafficking enterprise. They also contain notes of statements that certain witnesses made about the defendant, the bribes he took, what the defendant did in exchange for those bribes, and the

---

[3] The government began providing the defense with this § 3500 material approximately six months before the currently scheduled trial date. See ECF No. 86, 92, 104, 124.

15

names of other members of the Mexican government the defendant worked with in furtherance of the Sinaloa Cartel's drug trafficking enterprise. Given that the defendant has far more information than required, including a significant volume of § 3500 material multiple months in advance of trial, the defendant cannot credibly claim that he will be "actual[ly] surprise[d]" at trial. Walsh, 194 F.3d at 47. The defendant also cannot use a bill of particulars as a mechanism for the early production of § 3500 material. See, e.g., United States v. Shkreli, No. 15-CR-637 (KAM), 2016 WL 8711065, at *7 (E.D.N.Y. Dec. 16, 2016) ("The request for allegedly false and fraudulent statements is [an] attempt by [the defendant] to gain premature access to § 3500 material.").

In short, a bill of particulars is unwarranted because the defendant has and will continue to receive the information he seeks in an alternate form that does not improperly restrict the government's proof at trial. See supra page 11; United States v. Germain, 33 F. App'x 565, 566 (2d Cir. 2002) (noting that the government is "strictly limited to proving what it has set forth within" a bill of particulars, although a variance of the evidence at trial is only grounds for a reversal if it prejudices the defendant) (citing United States v. Glaze, 313 F.2d 757, 759 (2d Cir. 1963).

16

CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny the defendant's motion to dismiss and for a bill of particulars.

Dated: Brooklyn, New York
November 4, 2022

BREON PEACE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

By: /s/
Saritha Komatireddy
Erin M. Reid
Philip Pilmar
Marietou E. Diouf
Assistant U.S. Attorneys
(718) 254-7000